STATE of Missouri ex rel. FORD
MOTOR COMPANY,
Relator,

v.

The Honorable Henry WESTBROOKE,
Respondent.

No. SC 85970.

Supreme Court of Missouri,
En Banc.

Nov. 23, 2004.

Rehearing Denied Jan. 11, 2005.

Robert T. Adams, Paul A. Williams, Christopher R. Miller, Shook, Hardy & Bacon, Kansas City, MO, for Relator.

Steven B. Garner, Jeffrey M. Bauer, Strong Law Firm, P.C., Springfield, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I.

The trial court issued an order requiring Ford Motor Company to produce certain documents that Ford claimed were work product and protected from discovery. Ford requested a writ of prohibition to prevent the disclosure of those items and a preliminary writ was issued. The preliminary writ is made absolute as modified.

## II.

Gary Anderson was driving a Ford Bronco II on October 11, 1999, when he died in a single-vehicle rollover accident. His parents, wife, and minor children sued Ford for wrongful death, alleging that the Bronco II contained design defects. The plaintiffs served interrogatories and requests for production of documents in July 2002.

Ford objected to portions of the plaintiffs' discovery requests, claiming the documents and information sought were protected as work product. In particular,

Ford objected to the following on the basis that attorney-client privilege and/or the work product doctrine precluded disclosure:

> *Interrogatory No. 38:* [I]dentify all independent entities and individuals who were paid by Ford to perform stability, maneuverability, crashworthiness and/or handling tests on any Ford Bronco II and the dates and titles of said tests.
> *Request for Production No. 34:* [Produce a]ll testing conducted by any independent entity paid by Ford to test stability, maneuverability, crashworthiness and/or handling tests on any Bronco II.
> *Request for Production No. 173:* Produce all Design Analysis files and/or Product Analysis files for all accidents investigated involving a Bronco II for the years 1984 through the present which are not currently involved in litigation. This should include, but not be limited to, all vehicle inspection requests, inspection reports, correspondence, memoranda and accident reports.

The plaintiffs filed a motion in October 2003 to compel discovery. In response, Ford argued these materials were not discoverable because work product protection was perpetual in nature and plaintiffs were not entitled to Ford's work materials, testing, and the conclusions of its consulting experts who had worked on prior Bronco II litigation.

The trial court issued an order in November 2003 requiring Ford to produce a privilege log for the documents it claimed were privileged. Ford produced privilege logs on January 15 and 22, 2004. On January 21, 2004, the plaintiffs filed a second motion to compel discovery and for sanctions. The plaintiffs filed a third motion to compel in February 2004. Ford filed supplemental and revised privilege logs on February 23, 2004.

The trial court held a hearing on March 15, 2004, on pending motions. It issued an order three days later ordering Ford to disclose all of the materials it claimed were protected. It appears from the parties' subsequent correspondence that Ford disclosed on May 3, 2004, the materials identified in its privilege logs for plaintiffs' Interrogatory No. 38 and Request for Production No. 34.[1] A preliminary writ was issued by this Court on May 25, 2004.

### III.

■ Rule 56(b) governs the scope of discovery. In general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action...." Rule 56.01(b)(1). Subject to the rule governing expert witnesses, "documents and tangible things otherwise discoverable under Rule 56.01(b)(1)" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative"[2] may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the adverse party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[3] Rule 56.01(b)(3).

---

1. The correspondence between the parties, their respective briefs, and their oral arguments are confusing as to precisely what documents remain disputed.

2. For purposes of Rule 56.01(b)(3), "representative" includes "attorney, consultant, surety, indemnitor, insurer, or agent."

3. Work product is distinguishable from attorney-client privilege. While the attorney-client privilege protects disclosures by the client to the attorney and is absolute in all but the most extraordinary situations, work product "is designed to prevent a party from reaping the benefits of his opponent's labors ... for the same or a related cause of action." *State*

■ The exception codified in Rule 56.01(b) is known as the "work product privilege," or the "work product doctrine."[4] The work product privilege precludes an opposing party from discovering materials created or commissioned by counsel in preparation for possible litigation. *See State ex rel. Friedman v. Provaznik,* 668 S.W.2d 76, 80 (Mo. banc 1984). In addition, it "protects the 'thoughts' and 'mental processes' of the attorney preparing a case." *State ex rel. Polytech, Inc. v. Voorhees,* 895 S.W.2d 13, 14 (Mo. banc 1995). The doctrine generally protects "both tangible work product (consisting of trial preparation documents such as written statements, briefs, and attorney memoranda) and intangible work product (consisting of an attorney's mental impressions, conclusions, opinions, and legal theories-sometimes called opinion work product)" from disclosure. *State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley,* 898 S.W.2d 550, 552 (Mo. banc 1995).

■ "Because Rule 56.01(b)(3) protects only documents or tangible things, it has mistakenly been held that the entire work product doctrine only protects those documents or tangible things protected by the rule. As this statement ignores intangible work product, it is incorrect." *Id.* at 552–53 (footnote and citation omitted). Protection of intangible work product exists independently of Rule 56.01(b)(3). *Id.* at 553. Once the requisite showing has been made to satisfy Rule 56.01(b)(3), a court ordering discovery "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 56.01(b)(3).

## IV.

In discovery, "[t]he party seeking discovery shall bear the burden of establishing relevance." Rule 56.01(b)(1). If relevance either has been established or is uncontested and a party claims that a privilege precludes disclosure, "[t]he party asserting the privilege usually has the burden of proof to show that the privilege applies." John T. Hundley, Annotation, *Waiver of Evidentiary Privilege by Inadvertent Disclosure—Federal Law,* 159 A.L.R. Fed. 153 (2000); *see* Friedenthal et al., Civil Procedure sec. 7.4 (3d ed.1999).

■ Blanket assertions of work product are insufficient to invoke protection.[5] *State ex rel. Faith Hosp. v. Enright,* 706 S.W.2d 852, 856 (Mo. banc 1986). In order to invoke work product protection, the party opposing discovery "must establish, via competent evidence, that the materials sought to be protected (1) are documents or tangible things, (2) were prepared in anticipation of litigation or for trial, and (3) were prepared by or for a party or a representative of that party." *Raytheon Aircraft Co. v. United States Army Corps of Eng'rs,* 183 F.Supp.2d 1280, 1287–88 (D.Kan.2001); *see, e.g., State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley,* 898 S.W.2d 550, 554 (Mo. banc 1995) (party challenging privilege must have "sufficient information to assess whether the claimed privilege is applicable"). "Competent evidence" may include a privilege log and affidavits from counsel. *See Rabushka ex rel. United States,* 122 F.3d 559, 565 (8th Cir.1997). The privilege log may identify documents individu-

---

*ex rel. Friedman v. Provaznik,* 668 S.W.2d 76, 80 (Mo. banc 1984).

**4.** For the purposes of this opinion these terms are used interchangeably.

**5.** A party may initially claim work product protection in response to a discovery request. The party seeking discovery, however, is entitled, at least, to a privilege log if requested.

ally or by categories if that provides sufficient clarity for the court to rule on the asserted privilege claim. *United States v. Am. Optical Co.*, 37 F.R.D. 233, 236 (E.D.Wis.1965). The party seeking discovery may attempt to establish that the materials' work product status has been lost by prior disclosure without an accompanying protective order or confidentiality agreement or that the party has substantial need of the materials and cannot, without undue hardship, obtain the substantial equivalent of the materials by other means. *See* Rule 56.01(b)(3). Limited discovery by deposition or otherwise regarding work product may be necessary. Through this process, the parties develop a factual record from which the trial court can render an informed decision.

■ In evaluating the merits of the asserted privilege or any claim of waiver or undue hardship, the trial court may order an *in camera* review of the disputed documents.[6] *See, e.g., State ex rel. Lester E. Cox Med. Ctr. v. Keet*, 678 S.W.2d 813, 815 (Mo. banc 1984); *State ex rel. Friedman v. Provaznik*, 668 S.W.2d 76, 80 (Mo. banc 1984). If appropriate, the trial court may appoint a special master pursuant to Rule 68.01(a).[7] In the appointment, the trial court should delineate the scope of the master's powers. Rule 68.01(e). The compensation of the master "shall be charged upon such of the parties ... as the court may direct." Rule 68.01(a).

## V.

■ The plaintiffs request that this Court quash the preliminary writ of prohibition and require Ford to disclose all the disputed documents. Ford, on the other hand, asks this Court for an order declaring that work product protection is "perpetual" and that all of its documents are protected. Yet neither of the parties has developed a factual record to support a determination of whether these documents are or are not work product or even which documents are still at issue.

## VI.

The parties must develop a factual record before the trial court. The trial court shall determine what documents are at issue, whether each document (or class of documents) is or is not work product, whether work product protection has been lost by prior unprotected disclosure, and, if appropriate, whether the plaintiffs have substantial need of information contained in any of the documents and cannot obtain equivalent information without undue hardship. Ford has the burden of establishing that any particular document is entitled to work product status. Plaintiffs have the burden of establishing that this status has been lost by unprotected disclosure or that they have substantial need of information contained in any of the documents and cannot obtain equivalent information without undue hardship.

6. At oral argument, Ford agreed that an *in camera* review of the disputed documents would be appropriate.

7. Rule 68.01 provides in pertinent part:

(a) ... Each circuit court in which any action is pending may appoint a master therein. The compensation to be allowed a master shall be charged upon such of the parties, or paid out of any fund or subject matter of the action which is in the custody or control of the court, as the court may direct.

. . . .

(e) ... The order of reference to the master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report.

## VII.

Finally, the Court must note the excessive amount of time that has passed since these documents were first requested. Missouri's litigators are reminded that "[t]he discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants." *State ex rel. Madlock v. O'Malley,* 8 S.W.3d 890, 891 (Mo. banc 1999). The discovery process was not designed to be an endless and unduly expensive ordeal. The rules of discovery are intended to allow pretrial discovery to be conducted as promptly and inexpensively as possible. Missouri litigators should act accordingly.

## VIII.

The preliminary writ issued by this Court is made absolute as modified. The trial court and the parties are to proceed in accordance with this opinion.

WHITE, C.J., WOLFF, STITH, TEITELMAN and LIMBAUGH, JJ., and BLACKMAR, SR.J., concur.

RUSSELL, J., not participating.